UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IVAN ANTONYUK, GUN OWNERS OF AMERICA,
INC., GUN OWNERS FOUNDATION, and GUN
OWNERS OF AMERICA NEW YORK, INC.,

                        Plaintiffs,

           -against-                                    Case No. 1:22 Civ. 734
                                                              (GTS / CFH)

KEVIN P. BRUEN, in his official capacity as
Superintendent of the New York State Police,

                        Defendant.
------------------------------------------------------------------X

### DEFENDANT SUPERINTENDENT BRUEN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS

                              LETITIA JAMES
                              Attorney General
                              State of New York
                              The Capitol
                              Albany, New York 12224-0341
                              Attorney for Superintendent Bruen

James M. Thompson, Bar Roll No. 703513
  Special Counsel
Michael G. McCartin, Bar Roll No. 511158
  Special Counsel

August 15, 2022

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 3

STANDARD OF REVIEW ....................................................................................... 6

ARGUMENT ............................................................................................................ 7

   I.  UNDER BINDING SECOND CIRCUIT PRECEDENT, THE ORGANIZATIONAL
      PLAINTIFFS LACK STANDING .................................................................. 7

   II.  SUPERINTENDENT BRUEN IS NOT A PROPER DEFENDANT BECAUSE THERE
      IS NO INJURY TRACEABLE TO HIM AND THE ELEVENTH AMENDMENT BARS
      SUIT AGAINST HIM ...................................................................................... 9

      A. Any Alleged Injury From the Licensing Laws Is Not Fairly Traceable To
         Superintendent Bruen ................................................................................. 9

      B. The Eleventh Amendment Bars Suit Against Superintendent Bruen .......................... 12

   III. PLAINTIFF ANTONYUK HAS NOT ALLEGED AN INJURY-IN-FACT ................. 13

      A. Because Plaintiff Antonyuk's License Does Not Expire, He Will Never Be Subject To
         The Good Moral Character, Interview, Social Media Disclosure, or Training
         Requirements He Is Challenging ................................................................. 14

      B. Plaintiff Antonyuk Lacks Standing to Challenge the Licensing Provisions of the CCIA
         Because He Has Not Yet Filed For a License ............................................. 15

      C. Plaintiff Antonyuk's Overly Generalized and Conclusory Allegations Do Not Properly
         Allege A Sufficient Injury-In-Fact for a Pre-Enforcement Challenge ........................ 17

CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

Aguayo v. Richardson,
    473 F.2d 1090 (2d Cir. 1973)...................................................................................8

Allen v. Wright,
    468 U.S. 737 (1984)............................................................................................17

Aron v. Becker,
    48 F. Supp. 3d 347 (N.D.N.Y. 2014) .................................................................10

Bach v. Pataki,
    408 F.3d 75 (2d Cir. 2005)..................................................................................11

Baur v. Veneman,
    352 F.3d 625 (2d Cir. 2003)................................................................................20

Brokamp v. James,
    573 F. Supp. 3d 696 (N.D.N.Y. 2021) ........................................................... 13-14

Butler v. Obama,
    814 F. Supp. 2d 230 (E.D.N.Y. 2011) ...............................................................18

Carter v. HealthPort Techs., LLC,
    822 F.3d 47 (2d Cir. 2016)....................................................................................6

Cedar Point Nursery v. Hassid,
    141 S.Ct. 2063 (2021)........................................................................................19

Chrysafis v. James,
    534 F. Supp. 3d 272 (E.D.N.Y. 2021) ...............................................................12

Citizens Union of the City of N.Y. v. Attorney General of N.Y.,
    No. 16 Civ. 9592, 2017 WL 2984167 (S.D.N.Y. June 23, 2017)..........................13

City of L.A. v. Lyons,
    461 U.S. 95 (1983)..............................................................................................19

DaimlerChrysler Corp. v. Cuno,
    547 U.S. 332 (2006)............................................................................................14

Davis v. FEC,
    554 U.S. 724 (2008)............................................................................................14

Frey v. Bruen,
    No. 21 CV 5334, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022) ...................... passim

HealthNow N.Y., Inc. v. New York,
   739 F. Supp. 2d 286 (W.D.N.Y. 2010), aff'd on other grounds, 448 F. App'x
   79 (2d Cir. 2011)...........................................................................................................12

ID7D Co. v. Sears Holding Corp.,
   2012 WL 1247329 (D. Conn. Apr. 13, 2012).........................................................20

In re Dary Mart Convenience Stores, Inc.,
   411 F.3d 367 (2d Cir. 2005)...................................................................................12

Keepers, Inc. v. City of Milford,
   807 F.3d 24 (2d Cir. 2015).....................................................................................14

Kelly v. N.Y. State Civil Service Comm'n,
   No. 14 Civ. 716, 2015 WL 861744 (S.D.N.Y. Jan. 26, 2015)................................12

L'Oreal USA, Inc. v. Trend Beauty Corp.,
   2013 WL 4400532 (S.D.N.Y. Aug. 15, 2013).......................................................20

Lewis v. Casey,
   518 U.S. 343 (1996)...............................................................................................14

Libertarian Party of Erie Cty. v. Cuomo,
   300 F. Supp. 3d 424 (W.D.N.Y. 2018), aff'd in part, appeal dismissed in part,
   970 F. 3d 106 ..................................................................................................10, 15

Libertarian Party of Erie Cty. v. Cuomo,
   970 F.3d 106 (2d Cir. 2020)..........................................................................5, 10, 16

Madanat v. First Data Corp.,
   626 F. App'x 349 (2d Cir. 2015) ..........................................................................20

Malave v. Freytes,
   2012 WL 6708146 (D.N.J. Dec. 26, 2012)............................................................20

Mann v. N.Y. State Ct. of Appeals,
   No. 21-CV-49, 2021 WL 5040236 (N.D.N.Y. Oct. 29, 2021) ...............................12

Marino v. Twn. of Branford,
   No. 17-cv-1828, 2018 WL 691715 (D. Conn. Feb. 2, 2018)..................................11

Mental Hygiene Legal Serv. v. Cuomo,
   13 F. Supp. 3d 289 (S.D.N.Y. 2014)......................................................................20

Miccosukee Tribe of Indians v. Fla. State Ath. Comm'n,
   226 F.3d 1226 (11th Cir. 2000) .............................................................................18

Nnebe v. Daus,
   644 F.3d 147 (2d Cir. 2011)..................................................................................8

NRA of Am. v. Hochul,
   No. 20-3187-cv, 2021 WL 5313713 (2d Cir. Nov. 16, 2021) .............................. 7-8

Oneida Indian Nation v. U.S. Dep't of the Interior,
   336 F. Supp. 3d 37 (N.D.N.Y. 2018)....................................................................6-7

Osterweil v. Bartlett,
   No. 09-cv-825, 2010 WL 1146268 (N.D.N.Y. Feb. 24, 2010)..............................11

Raley v. Hyundai Motor Co.,
   642 F.3d 1271 (10th Cir. 2011) (Gorsuch, J.)......................................................20

Schwartz v. HSBC Bank USA, N.A.,
   2017 WL 95118 (S.D.N.Y. Jan. 9, 2017) ............................................................20

Sibley v. Watches,
   501 F. Supp. 3d 210 (W.D.N.Y. 2020) ..........................................................10, 19

Simon v. E. Ky. Welfare Rights Org.,
   426 U.S. 26 (1976)................................................................................................9

Spokeo, Inc. v. Robins,
   578 U.S. 330 (2016)......................................................................................13, 16

Town of Chester v. Laroe Estates, Inc.,
   137 S. Ct. 1645 (2017)..........................................................................................7

United Food & Commercial Workers Union, Local 919 v. Centermark Props.
   Meriden Square,
   30 F.3d 298 (2d Cir. 1994)....................................................................................7

United States v. Decastro,
   682 F. 3d 160 (2d Cir. 2012), cert. denied, 568 U.S. 1092 (2013) ...................15, 17

**CONSTITUTIONS**

Second Amendment ...................................................................................... 3-4, 17

Eleventh Amendment.................................................................................... passim

U.S. Constitution....................................................................................................9

**STATE STATUTES**

Pa. Cons. Stat.
   § 6109(d)(3) ..........................................................................................................5

Concealed Carry Improvement Act ("CCIA) ........................................................................ passim

2022 N.Y. Laws ch. 371
    § 1 ...........................................................................................................................5, 14

N.Y. Penal Law
    § 265.00(10) ...........................................................................................................11
    §§ 265.00(10), 400.01(1) .......................................................................................13
    § 400.00(1) ........................................................................................................ 14-15
    § 400.00(10) ...................................................................................................... 14-15

New York's Sullivan Law ............................................................................................3

On July 1, 2022, the Concealed Carry Improvement Act ................................................3

Penal Law
    § 400.00(10)(b) ......................................................................................................15

Penal Laws ................................................................................................................19

STATE REGULATIONS

Inj. Mem. 4, ECF No. 9-1 .............................................................................................8

RULES

Fed. R. Civ. P. 12(b)(1) ...............................................................................................1

Fed. R. Civ. P.
    Rule 12(b)(1) .........................................................................................................21

Fed. R. Civ. P. 19(a)(1)(B)(i) ......................................................................................19

MISCELLANEOUS AUTHORITIES

Press Release, July 1, 2022, available at https://on.ny.gov/3BM6Hz7 ........................ 3-4

Defendant Kevin P. Bruen ("Superintendent Bruen" or the "Defendant), sued in his official capacity as Superintendent of the New York State Police, respectfully submits this memorandum of law, together with the Declaration of Assistant Attorney General Michael G. McCartin ("McCartin Decl.") and the exhibits attached thereto, in support of his motion to dismiss the Complaint ("Compl." ECF. No. 1) filed by Plaintiffs Ivan Antonyuk, Gun Owners of America, Inc. ("GOA"), Gun Owners Foundation ("GOF"), and Gun Owners of America New York, Inc. ("GOA-NY") (collectively, "Plaintiffs").   Because Plaintiffs lack standing, and because the Eleventh Amendment bars suit, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiffs want the Court to adjudicate the constitutionality of nearly every major aspect of the Concealed Carry Improvement Act, but they have not alleged facts to support the "irreducible constitutional minimum" elements of standing that would give them a right to that ruling.  As a threshold matter, nearly fifty years of unbroken Second Circuit precedent prevents organizational plaintiffs from filing suit on behalf of their members, meaning that if any party is to have Article III standing, it must be Plaintiff Antonyuk himself.  But the Complaint's allegations also do not support standing in his case, particularly because, as a current holder of a Schenectady County pistol permit, he will never be required to renew his license, and therefore will never be subject to the interview, social media disclosure, or training requirements.

This is fatal to Plaintiff Antonyuk's standing, and therefore to the subject matter jurisdiction of this case – and it is not the only dispositive flaw of its kind.  Most obviously, Plaintiff Antonyuk has not suffered any injury traceable to Superintendent Bruen that would support his challenge to the CCIA's licensing provisions, because the Superintendent is only a licensing officer for retired members of the State Police, not ordinary citizens of Schenectady

County.  Next, Plaintiff Antonyuk has not applied for a license under the new law, which is a prerequisite for a constitutional challenge to a licensing statute under Second Circuit precedent, and there are no allegations in the Complaint indicating that his application would be denied.

Even if these threshold issues were not dispositive, Plaintiff Antonyuk has not shown (and cannot show) an injury-in-fact, which requires both concrete allegations that a plaintiff intends to engage in prohibited conduct and a credible threat of prosecution.  He wants the Court to rule on the constitutionality of every one of the sensitive locations specified in the CCIA – from preschools to courthouses to universities to bars and stadiums – but he does not specifically allege a plan to take a gun to any of them.  Similarly, he wants the Court to strike down the CCIA's provision requiring that a person carrying a gun onto private property have the owner's consent – a ruling that would, if granted, infringe on the fundamental constitutional rights of property owners statewide – without any allegations indicating that the provision will ever be applied to him.  Nor has he alleged facts that would support a credible threat of prosecution, by Superintendent Bruen or any other authority; instead, the allegation of standing seems to be based only on the existence of the statute and Superintendent Bruen's position, neither of which is sufficient as a matter of law.  This also gives rise to a fatal Eleventh Amendment issue: for the <u>Ex parte Young</u> exception to permit the Plaintiffs' suit, the defendant must have a particular duty to enforce the challenged statute; Superintendent Bruen's general law enforcement role is not sufficient, meaning the Eleventh Amendment is a separate barrier to the lawsuit.

There is a clear disconnect between the breadth of the advisory opinion the Plaintiffs want the Court to issue as to the CCIA's constitutionality and the lack of any allegations of how the statute would ever injure Plaintiff Antonyuk.  In addition to being a jurisdictional prerequisite, the Article III standing requirement exists for an important reason: ensuring that courts evaluate

genuine controversies with established facts, and issue opinions that resolve disputes as they are, not as the parties imagine they might be.  The CCIA is a statute of extraordinary importance to public safety, and its constitutionality deserves to be adjudicated in the context of genuine challenges brought by parties with a real stake in its specific application, not simply a generalized desire to see it struck down.  The Court should dismiss the Complaint for lack of standing.

## STATEMENT OF FACTS

On July 1, 2022, the Concealed Carry Improvement Act ("CCIA") was passed by the New York State Legislature in special session, then promptly signed into law by Governor Kathy Hochul.  At the bill signing in Times Square, Governor Hochul stated, "After a close review of the NYSRPA vs. Bruen decision, . . . I am proud to sign this landmark legislative package that will strengthen our gun laws and bolster restrictions on concealed carry weapons."  See Press Release, July 1, 2022, available at https://on.ny.gov/3BM6Hz7.  The bill was designed "to align with the Supreme Court's recent decision in []Bruen." 142 S. Ct. 2111 (2022).  See id.

In Bruen, the Supreme Court found that a single provision of New York's gun licensing regime was unconstitutional – the provision that required an applicant to demonstrate "proper cause" to obtain a license to carry a concealed weapon.  The Court held that requiring such a heightened, individualized need for self-defense to obtain a license violated the Second Amendment.  See id. at 2123 n.1; see also id. at 2157 (Alito, J., concurring) ("[T]oday's decision therefore holds that a State may not enforce a law, like New York's Sullivan Law, that effectively prevents its law-abiding residents from carrying a gun for this [self-defense].  That is all we decide.").  The Court did not address any other provision of New York's gun licensing or related statutes, and in fact held that "nothing in our analysis should be interpreted to suggest the unconstitutionality of . . . 'shall-issue' licensing regimes, under which 'a general desire for self-

defense is sufficient to obtain a permit.'" Id. at 2138 n.9 (cleaned up).  Justice Thomas' majority

opinion noted that these licensing laws "often require applicants to undergo a background check

or pass a firearms safety course," but that such measures are constitutional because they "are

designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding,

responsible citizens.'"  Id. (quoting D.C. v. Heller, 554 U.S. 570, 635 (2008)).  The Court also

noted that some of these constitutional licensing laws "have discretionary criteria," but found that

such criteria were permissible where they were aimed at excluding "individuals whose conduct

has shown them to be lacking the essential character of temperament necessary to be entrusted

with a weapon."  Id. at 2123 n.1 (quoting Dwyer v. Farrell, 193 Conn. 7, 12 (1984)).

The New York State Legislature met in a special session to enact statutory language to

comply with the dictates of the Supreme Court's Bruen decision and respect the requirements of

the Second Amendment, while also addressing the ongoing gun violence crisis, which has

continued to shock the nation's conscience after mass shootings at a Tops grocery store in Buffalo

and an elementary school in Uvalde, Texas.  See Speaker Heastie Statement on Passage of

Legislation to Protect New Yorkers from Gun Violence, July 1, 2022, available at

https://bit.ly/3Q8ge80 ("[W]e will not accept tragedies like the racist shooting in Buffalo or the

school shooting in Uvalde, Texas as the cost of access to firearms.").

The Sponsor's Memo of the CCIA bill makes it clear that the Legislature was set on

complying with Bruen, and securing the fundamental Second Amendment rights of all New

Yorkers:

> The proposed legislation creates a new licensing procedure that satisfies the
> requirements set forth by the United States Supreme Court decision in New York
> State Rifle & Pistol Association, Inc., v. Bruen, et al.  Notably, this replaces the
> "proper cause" requirements of New York's current conceal carry law, with a new
> set of requirements that protects individuals' Second Amendment rights as
> determined by the Supreme Court.  Under this bill, applicants who successfully

> meet New York's conceal carry license applications requirements will receive their
> license.  The bill furthers the State's compelling interest in preventing death and
> injury by firearms.

See Sponsor Memo, Declaration of Michael G. McCartin, Exhibit A, p. 4.  Although many of New

York's lawmakers vehemently disagreed with Bruen, New York respected and complied with the

majority opinion of the high court, and shifted its laws to stand side-by-side with the 43 "shall-

issue" states whose laws were endorsed by the Bruen majority.  See Sponsor Memo at 1 (discussing

the purpose of the statute, explaining that "[a]s a result of this decision, the State must amend the

State's laws on concealed carry permits . . . . The proposed legislation changes the concealed carry

permitting process and adds specific eligibility requirements.").

For instance, New York adjusted its requirement that concealed carry licensees must have

"good moral character," which had previously been upheld by the Second Circuit on the first prong

of the Heller test, see Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106, 126-27 (2d Cir.

2020), in order to provide additional clarity that this provision ensures that license applicants must

be "law-abiding, responsible citizens" – a concept directly endorsed in Bruen itself.  See 142 S.

Ct. at 2124 n.1 (endorsing the constitutionality of Connecticut's statute denying licenses to

"individuals whose conduct has shown them to be lacking the essential character of temperament

necessary to be entrusted with a weapon").  To that end, the Legislature explained that the term

"shall mean having the essential character, temperament and judgement necessary to be entrusted

with a weapon and to use it only in a manner that does not endanger oneself or others."  2022 N.Y.

Laws ch. 371 § 1. Similar standards exist in several of the "shall-issue" licensing laws specifically

endorsed by the Supreme Court in Bruen.  See, e.g., Pa. Cons. Stat. § 6109(d)(3) (requiring an

investigating sheriff to determine "whether the applicant's character and reputation are such that

the applicant will not be likely to act in a manner dangerous to public safety"); 11 Del. Code. §

1441 ("A person of full age and good moral character desiring to be licensed to carry a concealed deadly weapon for personal protection . . . .").

In order to make that determination, the new law provided for specific elements of every application, including an in-person interview, character references, and review of an applicant's social media postings. Cf. Bruen, 142 S.Ct. at 2162 (Kavanaugh, J., concurring) (explaining that permissible state laws "may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and  . . . other possible requirements"). And New York enumerated the vulnerable locations where guns should not be permitted, in keeping with "longstanding . . . laws forbidding the carrying of firearms in sensitive places," which are "presumptively lawful." Id. at 2162 (Kavanaugh, J., concurring) (quoting Heller, 554 U.S. at 626-27). In sum, New York's CCIA is the vehicle by which the State is now in compliance with Bruen.

## STANDARD OF REVIEW

"Unless a plaintiff has Article III standing, a court lacks subject matter jurisdiction to hear their claim." Oneida Indian Nation v. U.S. Dep't of the Interior, 336 F. Supp. 3d 37, 44 (N.D.N.Y. 2018) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, as Defendant Bruen does here, a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (internal quotation marks omitted).

"To establish Article III standing, a plaintiff bears the burden of establishing three 'irreducible constitutional minimum' elements." Oneida, 336 F. Supp. 3d at 44 (quoting Lujan, 504 U.S. at 560). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

judicial decision." Id. (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).  "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1651 (2017).  "[W]hen there are multiple plaintiffs," as there are in this case, then at least "one plaintiff must have standing to seek each form of relief requested in the complaint."  Id.  The burden must be carried by the plaintiff without the Court filling in the blanks on its behalf, because "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  Oneida, 336 F. Supp. 3d at 44 (quoting Shipping Fin. Servs. Corp. v. Drakos, 14 F.3d 129, 131 (2d Cir. 1998)).  And "[w]here jurisdiction is lacking" because of a lack of standing, then "dismissal is mandatory."  United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square, 30 F.3d 298, 301 (2d Cir. 1994).

## ARGUMENT

### I.   UNDER BINDING SECOND CIRCUIT PRECEDENT, THE ORGANIZATIONAL PLAINTIFFS LACK STANDING

As an initial matter, under controlling Second Circuit precedent, none of the three organizational plaintiffs – Gun Owners of America, Inc., Gun Owners Foundation, and Gun Owners of America New York, Inc. – has alleged facts sufficient to support standing as a plaintiff in its own right.  The Second Circuit has held that "organizations suing under Section 1983 must, *without relying on their members' injuries*, assert that their own injuries are sufficient to satisfy Article III's standing requirements."[1]  NRA of Am. v. Hochul, No. 20-3187-cv, 2021 WL

---

[1] Two of the organizational plaintiffs do not even claim to bring suit on behalf of their members, instead claiming only to have "supporters" in this District.  See Compl. ¶ 3 ("GOF is supported by gun owners across the country and within this district"); id. ¶ 4 ("GOA-NY has more than four hundred supporters in New York, some of whom reside in this district.").  If Second Circuit precedent does not permit an organization to sue based on "injuries to its members," NRA, 2021 WL 5313713, at *2, it certainly will not permit suit on behalf of non-member "supporters."

5313713, at *2 (2d Cir. Nov. 16, 2021) (summary order) (emphasis added) (quoting N.Y. State Citizens' Coal. for Child. v. Poole, 922 F.3d 69, 74-75 (2d Cir. 2019)).   The rule that "an organization does not have standing to assert the rights of its members" stems from the Circuit's longstanding doctrine "interpret[ing] the rights § 1983 secures to be personal to those purportedly injured." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Supervisors, 737 F.2d 155, 160 (2d Cir. 1984)).  This doctrine has been the law of the Second Circuit for nearly half a century, see Aguayo v. Richardson, 473 F.2d 1090, 1099 (2d Cir. 1973), and remains binding precedent today.  See NRA, 2021 WL 5313713 at *2.

Regarding the organizational Plaintiffs, the Complaint in this action only alleges injuries to the "members and supporters" of Plaintiffs GOA, GOF, and GOA-NY.  See Compl., ¶¶ 117-125; see also id. ¶ 5 (noting that the organizations are suing only "in a representational capacity").  Plaintiffs' memorandum of law in support of their preliminary injunction similarly argues only that these organizational Plaintiffs "have members and supporters in New York who will face the same harms and similar harms as Plaintiff Antonyuk, due to the impending implementation of CCIA."  Pls' Prelim. Inj. Mem. 4, ECF No. 9-1.  Under the settled law described above, these alleged harms to members cannot provide standing for the organizational plaintiffs to sue.  "Because [each organizational plaintiff] failed to allege its own injuries separate and apart from injuries to its members, it lacks standing in this § 1983 action," and dismissal is required.  NRA, 2021 WL 5313713, at *2.

## II.   SUPERINTENDENT BRUEN IS NOT A PROPER DEFENDANT BECAUSE THERE IS NO INJURY TRACEABLE TO HIM AND THE ELEVENTH AMENDMENT BARS SUIT AGAINST HIM

### A.   Any Alleged Injury From the Licensing Laws Is Not Fairly Traceable To Superintendent Bruen

Plaintiff Antonyuk has sued the wrong defendant to challenge the CCIA.  Plaintiff pleads absolutely no information about how the statute will be concretely and particularly applied to him in any type of unconstitutional manner by Superintendent Bruen.  This failure is crucial here because the U.S. Constitution requires that a plaintiff's alleged injury be "fairly traceable" *to the defendant's conduct*.  See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 42 (1976) ("[T]he 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").  Thus, Plaintiff Antonyuk must establish some causal relationship between Defendant Bruen's conduct and his alleged injury-in-fact.  See id.  Although Superintendent Bruen was one of the defendants in the recent U.S. Supreme Court case ruling on New York's prior "proper cause" licensing standard, the standing issue was not similarly present there because the plaintiffs in that matter had also sued "a New York Supreme Court justice, who oversees the process of licensing applications in Rensselaer County," and who had in fact handled the plaintiffs' license applications.  Bruen, 142 S.Ct. at 2125.

In the context of a challenge to the gun licensing laws, both the Second Circuit and New York District Courts have held that the only proper defendant is a licensing officer, and not state officials who simply bear law enforcement responsibilities by virtue of their position.   In Libertarian Party of Erie County v. Cuomo, an organization and a number of individuals brought suit against both state officials (including the Governor, Attorney General, and the Superintendent

of the State Police), as well as judges who served as licensing officials in several counties, challenging various aspects of the licensing laws, including the "good moral character" requirement that preceded the one Plaintiffs challenge here.  See 300 F. Supp. 3d 424, 431 (W.D.N.Y. 2018).  Chief Judge Geraci ruled that standing was lacking against all defendants other than two state Supreme Court Justices, reasoning that the plaintiffs' injuries were "'fairly traceable' only to [the judges], because none of the other Defendants [including the Superintendent] were involved with [plaintiff]'s injury."  Id. at 436; see also id. (dismissing state officials including the Superintendent and noting that redressability was also lacking).

The Second Circuit affirmed, finding "no error in the district court's determination that . . . the only defendants to whom [plaintiffs'] alleged injuries were fairly traceable were the judges who denied their respective applications."  Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106, 122 (2d Cir. 2020).  The Circuit noted that the District Court had "properly dismissed the claims asserted against" the Superintendent of the State Police and the other defendants because "[n]one of the other defendants was alleged to have had any role in the licensing process or in the consideration of the applications."  Id.  Numerous district court decisions have similarly dismissed state officials with law enforcement responsibilities as improper parties to a challenge to a gun licensing law, both on standing grounds and under the Eleventh Amendment.  See, e.g., Sibley v. Watches, 501 F. Supp. 3d 210, 234 (W.D.N.Y. 2020) (Governor, State Police Superintendent, and county District Attorney);[2] Aron v. Becker, 48 F. Supp. 3d 347, 368-69 (N.D.N.Y. 2014)

---

[2] Although the Second Circuit recently vacated a subsequent opinion in the Sibley case and remanded for further proceedings in light of Bruen, see No. 21-1986-cv, 2022 WL 2824268 (2d Cir. July 20, 2022), the dismissal of the Governor, Superintendent, and District Attorney was not affected.

(Governor); Osterweil v. Bartlett, No. 09-cv-825, 2010 WL 1146268, at *2 (N.D.N.Y. Feb. 24, 2010) (Governor and Attorney General).

Here, Plaintiff Antonyuk has named Defendant Bruen as the sole defendant in this action, and he has failed to plausibly allege that there exists a sufficiently direct causal connection between the conduct of Defendant Bruen and the actual licensing requirements being challenged. Indeed, a close examination of the language of the CCIA and other relevant law makes clear that Defendant Bruen has nothing at all to do with the licensing of civilian applicants in Schenectady County, the place of Plaintiff Antonyuk's residence. Compl. ¶ 94; Antonyuk Decl. ¶ 1 ("[I] live in Schenectady[,] New York."). Under New York law, Defendant Bruen is only the "licensing officer" for retired members of the Division of State Police. N.Y. Penal Law § 265.00(10) ("'Licensing officer' means . . . for the purposes of section 400.01 of this chapter [for retired members of the Division of State Police] the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance."). Plaintiff Antonyuk does not allege that he is a retired member of the State Police. His "licensing officer" in Schenectady County would thus be a County Court Judge or Supreme Court Justice of that county. It would not be Defendant Bruen. See Bach v. Pataki, 408 F.3d 75, 79 (2d Cir. 2005) ("Local licensing officers [are] often local judges . . . .").

In short, Plaintiff Antonyuk has not sued a proper defendant here, and the lack of any injury "fairly traceable" to Superintendent Bruen is fatal to his claim. Since Plaintiff Antonyuk's alleged injuries are not fairly traceable to the sole defendant in this case, Superintendent Bruen, Plaintiff Antonyuk lacks standing to pursue any of the relief requested. See Marino v. Twn. of Branford, No. 17-cv-1828, 2018 WL 691715, at *2 (D. Conn. Feb. 2, 2018) ("As an initial matter, the

plaintiff appears to have sued the wrong defendants . . . . [a]s a result, the court cannot grant him the relief he seeks with respect to his license.").

      B.      The Eleventh Amendment Bars Suit Against Superintendent Bruen

Plaintiffs' action against Superintendent Bruen is also barred by the Eleventh Amendment, for reasons that largely mirror the traceability analysis discussed above. "The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens, unless (1) the state consents to be sued, or (2) Congress validly abrogates the state's immunity." Mann v. N.Y. State Ct. of Appeals, No. 21-CV-49, 2021 WL 5040236, at *4 (N.D.N.Y. Oct. 29, 2021) (quoting Ross v. CUNY, 211 F. Supp. 3d 518, 525 (E.D.N.Y. 2015)). "Since New York has not consented to be sued, and because Section 1983 did not abrogate New York's Eleventh Amendment immunity, Plaintiff[s'] claims can only proceed if the Ex parte Young exception applies." Id.

"To fall within the Ex parte Young exception, however, the defendant state officer 'must have some connection with the enforcement of the act, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" HealthNow N.Y., Inc. v. New York, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010), aff'd on other grounds, 448 F. App'x 79 (2d Cir. 2011) (summary order); accord Chrysafis v. James, 534 F. Supp. 3d 272, 288-89 (E.D.N.Y. 2021); see also In re Dary Mart Convenience Stores, Inc., 411 F.3d 367, 372 (2d Cir. 2005) ("[T]he Ex parte Young exception is not a legal fiction, but rather involves the infliction of real damage by an officer, without authority by the state, upon the plaintiff."). "For a state officer to be a proper party, both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty are needed." Kelly v. N.Y. State Civil Service

Comm'n, No. 14 Civ. 716, 2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015) (citing HealthNow, 739 F. Supp. 2d at 294).

Here, as discussed more fully in Section II(A) above, Superintendent Bruen is only directly involved in the licensing process for retired State Police members, and the Plaintiff is not one.  See N.Y. Penal Law §§ 265.00(10), 400.01(1).  To be sure, Superintendent Bruen is the chief executive of a statewide law enforcement agency, but a general ability or obligation to enforce state laws is not sufficient to pierce Eleventh Amendment immunity; instead, "it has been held that 'a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." Citizens Union of the City of N.Y. v. Attorney General of N.Y., No. 16 Civ. 9592, 2017 WL 2984167, at *4 (S.D.N.Y. June 23, 2017) (collecting cases).  Rather, a state official must have a "particular duty" to enforce a law in order to be a proper defendant under Ex Parte Young.  Id. at *5 n.6 (quoting Kelly, 201 WL 861744, at *3).  That "particular duty" is absent here, with respect to either the licensing laws or the sensitive places provisions of the CCIA.  Superintendent Bruen simply is not a proper defendant for the Plaintiffs' challenge, both on standing grounds and under the Eleventh Amendment.

## III.   PLAINTIFF ANTONYUK HAS NOT ALLEGED AN INJURY-IN-FACT

To establish standing, Plaintiff Antonyuk must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the only defendant, Superintendent Bruen, and (3) that is likely to be redressed by a favorable judicial decision.  See Spokeo, 578 U.S. at 338.  In the context of a pre-enforcement challenge to a criminal statute such as the one raised in this case, to plead an injury-in-fact "Plaintiff must allege both a concrete intention to violate the law and the credible threat of prosecution if []he were to do so." Brokamp v. James, 573 F. Supp. 3d 696, 705 (N.D.N.Y. 2021) (ellipsis omitted).  Plaintiff Antonyuk, as the party invoking Article III federal

jurisdiction, bears the burden of establishing *all* three of the elements cited above.  Id.  So, where, as here, a case is at the pleading stage, the plaintiff must clearly allege sufficient facts demonstrating each element of his claim.  Id.  Furthermore, an alleged injury must be "particularized" in addition to being "concrete", i.e., it "must affect the plaintiff in a personal and individual way."  Id. (citation omitted).

Standing is not dispensed in gross.  Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996).  Rather, "a plaintiff must demonstrate standing for each claim he seeks to press" and "'for each form of relief'" that is sought.  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006) (quoting Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000)); see also Davis v. FEC, 554 U.S. 724, 734 (2008) (same); Keepers, Inc. v. City of Milford, 807 F.3d 24, 42 (2d Cir. 2015) (same).

> A.   Because Plaintiff Antonyuk's License Does Not Expire, He Will Never Be Subject To The Good Moral Character, Interview, Social Media Disclosure, or Training Requirements He Is Challenging

Plaintiff Antonyuk cannot demonstrate an injury-in-fact from the CCIA's key revisions to New York's licensing laws, including the good moral character, interview, social media disclosure, and training provisions, because these provisions will never be applied to him.  These provisions are part of N.Y. Penal Law § 400.00(1), which applies only when a license is "issued or renewed." See 2022 N.Y. Laws ch. 371 § 1.

But as a current holder of a Schenectady County unrestricted carry permit, see Compl. ¶ 1, Plaintiff Antonyuk will not be required to have his license re-issued or renewed, and therefore will never be subject to any of these application requirements.  Renewal of a license is governed by N.Y. Penal Law § 400.00(10), under which the renewal period is every three years for licenses issued in New York City, and every five years for licenses from Nassau, Suffolk, or Westchester

Counties.  See N.Y. Penal Law § 400.00(10).  But "elsewhere than in the city of New York and the counties of Nassau, Suffolk and Westchester, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section . . . and not previously revoked or cancelled, shall be in force and effect until revoked."  Id.  Plaintiff Antonyuk avers that his license "has never been revoked or suspended."  Compl. ¶ 106.  Accordingly, he will never need to renew his license, never need to have an interview, never need to disclose his social media, and never need to go through the training required for new applicants or renewals.[3]

> B.  Plaintiff Antonyuk Lacks Standing to Challenge the Licensing Provisions of the CCIA Because He Has Not Yet Filed For a License

Even if Plaintiff Antonyuk would potentially be subject to the requirements for new and renewal licenses, he has not yet filed for a permit under the CCIA, and his challenge would not be ripe until he did.  See United States v. Decastro, 682 F. 3d 160, 164 (2d Cir. 2012) (holding that plaintiff who failed to apply for a New York gun license lacked standing to challenge the state's licensing laws), cert. denied, 568 U.S. 1092 (2013); see also Libertarian Party of Erie Cty. v. Cuomo, 300 F. Supp. 3d 424, 433 (W.D.N.Y. 2018), aff'd in part, appeal dismissed in part, 970 F. 3d 106.  "As a general matter, to have standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy."  Decastro, 682 F.3d at 164.  The threshold requirement for standing that Plaintiff Antonyuk first apply for a license before bringing suit may be excused, but only "if he made a 'substantial showing' that submitting an application 'would

---

[3] Plaintiff Antonyuk alleges that he will be required to "renew or recertify his permit in January 2023" because "New York carry licenses must be recertified after five years."  Compl. ¶ 108.  But renewal and recertification are different – Mr. Antonyuk will only need to recertify under Penal Law § 400.00(10)(b), which merely requires updating one's contact information and firearms owned, and certifying "that such license holder is not prohibited from possessing firearms."  The interview, social media, and training requirements do not apply to this recertification process.  See N.Y. Penal Law § 400.00(1) (requirements apply only when a license is "issued or renewed").

have been futile.'" Id. (quoting Jackson-Bey v. Hanslmaier, 115 F. 3d 1091, 1096 (2d Cir.

1997)).  Here, Plaintiff Antonyuk does not allege that seeking a license would be futile, much less

make a "substantial showing" of futility, and it is almost certain that he could not – after all, he

has obtained a carry permit in the past and continues to hold one.  See Compl. ¶ 106.

Plaintiff Antonyuk has failed to plead sufficient facts to show that he is at risk of harm by

the new licensing requirements of the CCIA.  In particular, one of the central aspects of this case

is the challenge to the CCIA's language regarding the "good moral character" necessary for a

license applicant, see Compl. ¶¶ 52-58, 134, 144-45; Dkt. No. 9-1 at 4, 8-11, but there is no basis

to assume that Plaintiff Antonyuk would be denied a license for lack of good moral character.

Indeed, Plaintiff Antonyuk presumably already satisfied the previous version of the "good moral

character" requirement, which existed long before the CCIA, see Libertarian Party, 970 F.3d at

125-27 (upholding "good moral character" requirement against due process challenge), and he

fails to allege any facts to suggest that he would not satisfy it again, particularly when the CCIA

only further clarifies the meaning of "good moral character."  To the contrary, he alleges that "[h]e

is a law-abiding person, and has no disqualification under state or federal law which would prohibit

him from possessing a firearm."  Compl. ¶ 94.  Thus, because a "concrete" injury must "actually

exist," and it must be "real" and not "abstract," see Spokeo, 578 U.S. at 340, Plaintiff Antonyuk

has not borne his burden to establish standing on this issue.

Similarly, Plaintiff Antonyuk pleads absolutely no facts to indicate that the reference,

interview, or "social media" licensing requirements of the CCIA that he challenges are likely to

bar him from owning and carrying a gun.  He does not allege that he cannot find character

references, that there is disqualifying content in his social media postings, or that his presence for

an in-person interview would somehow lead to the denial of his application.[4]  In fact, Plaintiff

Antonyuk has almost certainly satisfied the character reference requirement in the past, since

Schenectady County required four character references in pistol permit applications long before

the Bruen decision or the passage of the CCIA.  See PPB-3 Pistol License Application form (Feb.

2007), TD Ex. 2 at 1 (requiring "four references who by their signature attest to your good moral

character").

        The Complaint provides no reason to believe that the CCIA's licensing requirements would

actually prevent Plaintiff Antonyuk from keeping and bearing arms.  Under Decastro, unless and

until he seeks a license and is rejected, he does not have standing to challenge a law that has not

impacted his Second Amendment rights.  See 682 F.3d at 164 ("The premise of Decastro's

argument is that New York's licensing scheme is itself constitutionally defective; his argument is

therefore tantamount to a challenge to that scheme.  However, because Decastro failed to apply

for a gun license in New York, he lacks standing to challenge the licensing laws of the state.").

        C.      Plaintiff Antonyuk's Overly Generalized and Conclusory Allegations Do Not
                Properly Allege A Sufficient Injury-In-Fact for a Pre-Enforcement Challenge

        The standing inquiry "requires careful judicial examination of a complaint's allegations to

ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims

asserted."  Allen v. Wright, 468 U.S. 737, 752 (1984).  Where, as here, a plaintiff is trying to

challenge a statute that has never been enforced against him, "pre-enforcement review is available

where the 'circumstances render the threatened enforcement sufficiently imminent,' which can be

established 'by plausible allegations that a plaintiff intends to engage in conduct proscribed by a

statute, and there exists a credible threat of prosecution thereunder.'"  Frey v. Bruen, No. 21 CV

_____

[4] Plaintiff Antonyuk similarly does not assert that he engages in any anonymous speech on any
social media site.

5334, 2022 WL 522478, at *4 (S.D.N.Y. Feb. 22, 2022) (cleaned up) (quoting Adam v. Barr, 792 F. App'x 20, 21-22 (2d Cir. 2019) (summary order)).  Plaintiff Antonyuk has not alleged either a concrete plan to violate the CCIA or a credible threat of prosecution by Superintendent Bruen.

Take Plaintiff Antonyuk's challenge to New York's protection of sensitive locations such as schools, places of worship, courthouses, playgrounds, and domestic violence shelters.  The Plaintiff is challenging the entire applicable section of the CCIA, see Compl. ¶ 69, but he fails to plead sufficient facts about any "sensitive place" to which he intends to take a gun.  He merely pleads – in overly generalized and entirely conclusory fashion – that he "wants to continue to lawfully carry [his] handgun in public, which [he has] done since 2009."  See Antonyuk Decl. ¶ 12, ECF No. 1-6.  But "such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that is required."  Frey, 2022 WL 522478, at *5 (emphasis in original) (quoting Lujan, 504 U.S. at 564).  There is no evidence or credible allegation that Plaintiff Antonyuk intends to take a gun into a homeless shelter, a bar, a church, a preschool, a university, a polling place, or into Times Square; yet he wants the Court to adjudicate the constitutionality of his carrying a gun into each of those sensitive places.  See Compl. ¶ 69; cf. Butler v. Obama, 814 F. Supp.2d 230, 240 (E.D.N.Y. 2011) ("speculation is insufficient to confer Article III standing"); Miccosukee Tribe of Indians v. Fla. State Ath. Comm'n, 226 F.3d 1226, 1229-30 (11th Cir. 2000) (courts must not "piece together an injury sufficient to give plaintiff standing when [the plaintiff] has demonstrated none").

Similarly, Plaintiff Antonyuk bases his challenge to the CCIA's private property protection, which merely requires that a person have an owner or lessee's consent before taking a gun onto their property, on an allegation that he will be harmed by the CCIA because, if a

hypothetical private citizen does not post up a sign welcoming guns onto their premises (or store), he will be forced to take his gun out of its holster, unload it, and place it in a lockbox in his vehicle before he enters onto that person's property. Compl. ¶ 114; see also Antonyuk Decl., ¶¶ 14-15. But "[a]bstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" City of L.A. v. Lyons, 461 U.S. 95, 101-02 (1983) (quoting Golden v. Zwicker, 394 U.S. 103-109-10 (1969)). There is no "real and immediate" likelihood that Plaintiff Antonyuk would be harmed by the private property protection, particularly when he pleads no facts about any concrete plan to violate it by taking his gun onto private property without permission.[5]

Plaintiff Antonyuk similarly fails to allege an injury-in-fact because he has not pled facts that indicate a credible threat of prosecution. "Although courts generally presume that the government will enforce its laws, 'the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing.'" Sibley, 501 F. Supp. 3d at 222 (quoting Adam, 792 F. App'x at 22). Like the plaintiffs in Adam, Sibley, and Frey, Plaintiff Antonyuk "does not allege that the [CCIA] has been enforced against him in the past or that anyone threatened him with prosecution." Id. Instead, he "infer[s] that because the Penal Laws exist, [he] will be

---

[5] If Plaintiff Antonyuk had such a concrete intention to invade someone else's property with a gun, the property owner would presumably be a necessary party, since a finding in Plaintiff Antonyuk's favor would infringe on his or her equally constitutional right to exclude others from the property, which "'is a fundamental element of the property right' that cannot be balanced away." Cedar Point Nursery v. Hassid, 141 S.Ct. 2063, 2077 (2021) (quoting Kaiser Aetna v. United States, 444 U.S. 164, 179 (1979)); cf. Fed. R. Civ. P. 19(a)(1)(B)(i) (party is required if "disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect [a relevant] interest"). Allowing Plaintiff Antonyuk to obtain an advisory opinion on the private property protection would involve adjudicating the rights of private property owners statewide, without any opportunity for them to be represented.

prosecuted once [he] carr[ies] [his] firearms outside the confines of [his] license[]."  Frey, 2022 WL 522478, at *5.  This provides no basis for a credible threat of prosecution, as a matter of law, much less a basis for a credible threat of prosecution from Superintendent Bruen, rather than some other authority.[6]

"When a litigant fails to plead sufficient facts to establish standing, then the [C]ourt is 'powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.'"  Mental Hygiene Legal Serv. v. Cuomo, 13 F. Supp. 3d 289, 298-99 (S.D.N.Y. 2014) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155-56 (1990)).  And that is the situation here with Plaintiffs' deficiently drafted Complaint: Plaintiffs simply have not sued the correct defendant, and they have not made sufficient factual allegations to create standing with regard to where they may take their firearms within New York State.  See Baur v. Veneman, 352 F.3d 625, 637 (2d Cir. 2003) ("[A] plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.").

Further, Plaintiff Antonyuk cannot belatedly obtain standing by alleging facts in his motion papers that are not present in the Complaint.  "'[F]acts' sprinkled into a brief are not facts averred in a complaint," Malave v. Freytes, 2012 WL 6708146, at *9 (D.N.J. Dec. 26, 2012); see Madanat v. First Data Corp., 626 F. App'x 349, 351 (2d Cir. 2015) (courts determine standing "as of the commencement of suit" with the filing of the complaint) (omits internal quotation); ID7D Co. v. Sears Holding Corp., 2012 WL 1247329, at *3 (D. Conn. Apr. 13, 2012) ("standing is to be determined as of the commencement of suit") (quoting Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1308 (Fed. Cir. 2013)); L'Oreal USA, Inc. v. Trend Beauty Corp., 2013 WL

---

[6] "The Superintendent is not required to make [a] disavowal" of an intent to enforce the law, "as he has not previously threatened or charged Plaintiff[] under the relevant statutes" or their predecessors."  Frey, 2022 WL 522478, at *5.

4400532, at *12 (S.D.N.Y. Aug. 15, 2013) ("a declaration executed after the commencement of this action cannot serve as the basis for standing").  And the Court is not empowered to correct those drafting deficiencies from the bench in order to obtain jurisdiction over a case in which Plaintiffs' litigation strategy and pleading choices has led to a lack of standing.  See Schwartz v. HSBC Bank USA, N.A., 2017 WL 95118, at *6 (S.D.N.Y. Jan. 9, 2017) ("It is the responsibility of the complaint clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)); Cf. Raley v. Hyundai Motor Co., 642 F.3d 1271, 1275 (10th Cir. 2011) (Gorsuch, J.) ("Where an appellant fails to lead, we have no duty to follow.  It is the appellant's burden, not ours, to conjure up possible theories to invoke [a court's] legal authority").

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant's motion to dismiss this action pursuant to Fed. R. Civ. P. Rule 12(b)(1) and the Eleventh Amendment, and grant such other relief as it deems just and proper.

Dated: August 15, 2022

  LETITIA JAMES
  Attorney General
  State of New York
  *Attorney for Superintendent Bruen*

  By: _____
  James M. Thompson
  Special Counsel
  Bar Roll No. 703513
  28 Liberty Street
  New York, NY 10005
  (212) 416-6556
  james.thompson@ag.ny.gov

By: **Michael McCartin**
  Michael G. McCartin, Of Counsel
  Assistant Attorney General | Special Counsel
  Bar Roll No. 511158
  The Capitol
  Albany, New York 12224
  Tel.: (518) 776-2620
  Michael.McCartin@ag.ny.gov

TO: All counsel of record (via ECF)